**People of the State of Illinois, Plaintiff-Appellee, v. Ernest V. Hayes, Defendant-Appellant.**

**Gen. No. 51,582.**

First District, Fourth Division.

March 20, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Allan Gersh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant received a bench trial and was found guilty of rape. On appeal his sole contention is that his guilt was not proved beyond a reasonable doubt.

EVIDENCE

### Testimony of Nancy Aderman, Prosecutrix

On Sunday, October 24, 1965, she was living alone in a one-room apartment at 839 Diversey in Chicago. She had met defendant four or five times when he was with her friend Roberta Lindenthaler who lived in the same building. Roberta spent the night of the 23rd in the prosecutrix's apartment remaining until 1:30 or 2:00 o'clock on the afternoon of the 24th. Between 4:30 and 4:45 defendant rang the buzzer in the lobby and asked her over the intercom if Roberta was there. Prosecutrix told him that Roberta wasn't there and he left but he rang the buzzer

a minute later and asked if he could come up and talk to her about Roberta. Prosecutrix said, "Yes" and let the defendant into her apartment. The conversation was concerned with the fact that the defendant was upset because Roberta had started drinking and "running around" ever since the prosecutrix had called her a thief. This had grown out of a dispute over $75 which the prosecutrix had left with Roberta and which had disappeared. The prosecutrix and the defendant then went to Roberta's apartment and she was not at home. Defendant left and she returned to her own apartment.

At approximately 5:15 or 5:30 p. m. the defendant rang her bell again and requested to come up to her apartment. She let him come up and upon opening the door defendant stepped in and pulled out a knife. The defendant said that she had better do what he wanted or he would cut up her face. He then slapped her across the face and told her to take off her clothes. The defendant put the knife in his back pocket and she did not see it again until after two acts of intercourse. She took off her own clothes and lay down on the bed. The defendant told her that she had better satisfy him or he would cut her up. She responded by saying, "Well, when you are being forced, you can't put your heart into anything."

After having intercourse, the prosecutrix and the defendant had a conversation about Roberta. Then they engaged in another act of intercourse. Following the second act of intercourse, defendant said what he was doing was not right and he told prosecutrix to go to the bathroom and get dressed. While they had been in bed, she did not see a knife. Shortly thereafter, defendant came into the bathroom and at the point of a knife forced prosecutrix to perform an act of oral copulation. Before defendant left her apartment he offered to call the police and turn himself in, but she refused. The defendant left her apartment about 6:00 or 6:30.

Dressed in the same clothes she wore prior to being raped, prosecutrix attempted to call her aunt, but she was not at home. However, she spoke to another individual at her aunt's house, but she did not mention the incident to that person. While she was at the phone, she made no attempt to call the police. She then returned to her apartment and her buzzer was rung by Roberta's brother William. She did not mention to him that she had been raped. Upon going out in the hall to meet William, whom she had invited upstairs, she ran into the defendant and another man. After a short conversation William and the other man left and defendant remained. He offered once again to turn himself in to the police, but prosecutrix again refused. It was actually at this point she was going downstairs to call her aunt for the first time.

On the way upstairs, she ran into the defendant and Roberta. Prosecutrix and Roberta went into her room and closed the door while the defendant waited outside. She apologized to Roberta for calling her a thief, but did not tell Roberta that she had been raped. Even when Roberta asked her what she was crying about, prosecutrix did not tell of the rape.

On cross-examination prosecutrix testified there were eight or ten apartments on her floor; that her clothing was not torn and that she made no outcry or scream. She did not attempt to pound on the wall or make any attempt to escape. Moreover, she made no effort to seek aid from her neighbors during and after the alleged acts. Prior to her rape she had heard a story about another girl in the building who had been raped by a man with a knife.

When the prosecutrix finally spoke to her aunt on the telephone, she did not mention that she had been raped. At 7:00 or 7:30 when her aunt arrived at her building, she told her what had happened. At approximately 1:00

a. m., eight hours after the act, prosecutrix reported the incident to the police. She went to the Illinois Masonic Hospital for an examination about 2:00 a. m. She did not show the doctor where she had been slapped. There was no mark.

### Testimony of Dr. Robert MacNerland

The parties stipulated that Dr. Robert MacNerland, if called, would have testified that he examined the prosecutrix at 2:00 a. m. on October 25 at Illinois Masonic Hospital, that he found no signs of trauma or abrasion in the vaginal area, that there were deposits of spermatozoa present but that he could not tell for how long because of the passage of time.

### Defendant's Testimony

He is forty years old. He denied that he raped prosecutrix or that he committed a deviate sexual assault. He had conversed with the prosecutrix over the intercom from the lobby on the afternoon of October 24. He asked her where Roberta was; she told him at the corner restaurant. He then went to the restaurant. He returned and went to the room of prosecutrix. They argued about the $75 he had given Roberta with the understanding that she was loaning it to prosecutrix and that he would get it back. He was only in the apartment for five or ten minutes. He went out with Roberta and later dropped her off at the building. He then went for parts for Roberta's brother's car and brought the car back. He was arrested at 1:00 a. m. in front of the building where prosecutrix lived while returning the car keys to Roberta.

OPINION

■ Defendant contends that the crime of rape was not proved beyond a reasonable doubt because (1) the evidence is not clear and convincing and (2) the testimony of prosecutrix is not corroborated by other facts

and circumstances. In People v. Scott, 407 Ill 301, 305, 95 NE2d 315, the court said:

> It is a fundamental rule in such cases that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. (Cases omitted.)

In the instant case prosecutrix testified that she was threatened with a knife. However, she stated that after displaying the knife defendant put it in his pocket before she got into bed and she did not see it when she was out of bed between the acts of intercourse; she saw it again when he forced her to commit a deviate act. There was, however, no evidence that a knife was found on defendant. She testified that while the alleged acts were transpiring, she complained it was difficult to satisfy him under the circumstances. Although the defendant offered to turn himself over to the police, she told him not to. She claims she was too afraid of defendant to call for help while he was there, or to ask him to turn himself in to the police or to use the pay phone on the third floor to seek the help of friends or neighbors or the police. Although her attacker had been in and around the building after the attack, the prosecutrix felt no compulsion to leave the building to get away from this dangerous individual or to have him arrested. In People v. Qualls, 21 Ill2d 252, 171 NE2d 612, the prosecutrix claimed to have been forced to have intercourse by one of the defendants who displayed and threatened her with a knife. In reversing the conviction the Supreme Court, at page

257, used language which is appropriate to the instant case:

> We are constrained to say, after a careful reading of the entire record, that the testimony of the prosecuting witness lacks verisimilitude. In such instance the evidence of a prosecutrix should be corroborated by some other testimony, fact or circumstance. (Cases omitted.)

██ Defendant then argues that there was no corroboration of prosecutrix's story. It is a well established rule that prompt complaint is corroborative of the prosecutrix's testimony in a rape case. People v. DeFrates, 395 Ill 439, 70 NE2d 591. In the instant case rather than prompt complaint the evidence discloses an unexplainable delay. Prosecutrix did talk to someone at her aunt's house but made no complaint to her. She talked to Roberta shortly after the occurrence but still made no complaint. She said nothing to Roberta's brother. She even talked to her aunt on the phone without complaining. It was only later at 7:00 or 7:30 when she was in her aunt's company that she claims to have made her first complaint that she had been raped although complaint to the police was not made until 1:00 a. m., eight hours after the alleged assault. The aunt did not testify. The acts of the prosecutrix and her aunt were not of that spontaneous character which is corroborative of testimony of the character given. As stated in People v. Carruthers, 379 Ill 388, 393, 41 NE2d 521, a rape case:

> There is inherent improbability in the testimony of the prosecutrix under the undisputed evidence of surrounding facts and circumstances admitted to be true. This undisputed testimony not only does not corroborate the prosecutrix but tends to discredit her story.

 

Since the testimony of prosecutrix was not clear and convincing and since there was no substantial corroboration of her story, defendant was not proved guilty beyond a reasonable doubt.

The judgment is reversed.

Reversed.

McCORMICK, P. J. and ENGLISH, J., concur.