THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LABON MORROW, Defendant-Appellant.

(No. 52395;

First District—April 16, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Nunzio D. Tisci, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Arthur Belkind, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was found guilty, after a bench trial, of the offenses of rape, robbery and burglary. Judgment was entered and he was sentenced to a term of five to ten years. On appeal defendant contends: (1) that he was not proved guilty beyond a reasonable doubt; (2) that he was entitled to be discharged pursuant to the 120 day statute; and (3) that his pre-trial identification was so unfair and suggestive as to deny him due process of law.

*Testimony of Claudia Alexander,* complaining witness, for the State.

On June 2, 1966, she lived at 6409 South Ingleside, Chicago, Illinois, on the second floor of the three story building. Her apartment has two and one-half rooms.

On June 2nd she went to bed about 10:30 P.M. After she fell asleep she heard a squeaking noise and woke up. She lay there for a second and then heard the noise again. When she went to get up she saw a man standing over her. She screamed and he grabbed her around the throat

and he said, "If you don't want to die to shut up, if you don't want to die." He jerked the cover off, tore off her two-piece pajamas, got in bed and then had intercourse with her. He was completely naked when she first saw him.

He was in the apartment three and one-half hours, from approximately 11:30 P.M. to 3:00 A.M. He had at least more than four acts of intercourse with her. During the time he was in bed with her she had a conversation with him:

"He just kept saying that he wasn't getting his kicks and asked me was I getting my kicks, and I told him no. He said, 'Well, why?' I said, 'Because I don't know who you are and you are not my husband.' And he say,' Well, act like I am your husband and help me to get my kicks.'"

She also asked him who he was and how he got into her apartment. He said that he came in through the window and that he lived next door. She also asked, "Well, haven't you got a wife?" And he said no, "I live there with my cousins and later they arrested my cousin's wife and she is in Gary now."

Around 3:00 A.M., after he had had intercourse with her numerous times, he said, "I am going. Give me your money." She said that she had no money. He then reached for a cigarette lighter by his clothes and took her right hand and stuck the lighter to it. He kept striking the lighter near her hand and asking for money. After her hand started to burn she told him he could have the money. She went in her dresser drawer and gave him $175 from her purse. There was a mark on her wrist, like a bruise or blister, which she identified from photographs that were taken after the attack on her.

After she gave him the money he picked up his clothes and went out of the window naked. Her bedroom window was not locked when she went to bed on June 2nd. Between her bedroom window and the adjacent apartment there is a small porch area where someone could walk.

Once her assailant left she took a bath and douches for two hours. She did not call the police until 4:00 P.M. Friday, June 3rd, because she was embarrassed and did not want to talk about the incident. After she called the police they came over and talked to her.

On cross-examination she testified that she had two children and that she had been separated from her husband for two years.

There is one main entrance for both 6407 and 6409 Ingleside. There are four apartments on each floor.

She never saw her assailant take off his clothes. During all of the time he was in the apartment there was no more light than the cigarette lighter. She did not know how many times she had intercourse. "I was

so exhausted I couldn't count how many times it was. I was exhausted and was frightened."

Her assailant held the cigarette lighter to her arm, then took it back, and then put it back near her arm again. This happened for about two minutes. The lighter was going for these two minutes.

She did not see her assailant come in the window. The last time she saw him he was going out the window. She shut the window after him but she did not see where he went. He carried his bundle of clothes and the cigarette lighter in one hand and pulled the window up with the other.

After her assailant left she bathed and went to work. She never told anybody at work about the occurrence. She did not bandage her arm when she went to work and she was never taken to a doctor for an examination.

Just before she called the police on June 3rd, about 4:00 or 6:30 P.M., she told the house manager about the attack. Then she called the police and they came over and talked to her. The police stayed a long time but she could not estimate exactly how long. She went to the police station with the officers. After she came home she went right to bed. Later the same evening (Friday, June 3rd) the house manager woke her up and told her to come next door. She went next door and identified defendant as her assailant. The defendant had his clothes on when she identified him. Only the police, the house manager and defendant were present when she identified him.

She did not remember the exact amount of money taken from her until it was brought to her attention at trial. She was saving the money for a vacation.

*Testimony of Robert Doty, for the State.*

He is a police officer with the Chicago Police Department. At 11:30 P.M. on June 3, 1966, he saw defendant at 6407 South Ingleside. He was with his partner at the time and they placed defendant under arrest. Complaining witness then came into the apartment and identified defendant.

On cross-examination he testified that one Lester Banks did not make an actual identification of defendant but told him that defendant fit the description given Banks by the complaining witness as the man who had raped her on June 2nd. However, his police report showed that, "The owner of the building, Banks, Lester, male Negro, 1910, who resides in the building at 6407, Apartment 3, confirmed the fact that Mr. Mc-Clendon was the lessor of Apartment 21, and he also identified Mr. Morrow as the one who raped and robbed Mrs. Claudia Alexander, a female Negro, 42, in Apartment 24, at 6409 Ingleside Avenue."

His partner and he entered McClendon's apartment with the help of Banks' passkey. Defendant was in the apartment at this time. They never saw or talked to Eddie McClendon.

Banks then asked complaining witness to come to McClendon's apartment. When she came in she said: "That's the man," referring to defendant.

It was stipulated that defendant was twenty-two years old.

*Testimony of Labon Morrow,* defendant, in his own behalf.

He lives at 5041 South Federal with his mother. On June 2, 1966, he was staying at Eddie McClendon's apartment at 6407 South Ingleside. He entered the apartment at 5:00 P.M. with his key given to him by Eddie and stayed there until Eddie came home some time after 9:00 P.M. They sat around and drank beer and listened to the record player until David Trotter, Eddie's brother-in-law, came over around 12:00 midnight. After David left, Eddie and he continued to drink beer and then they went to bed. When they woke up, Eddie cooked breakfast and left for work. He cleaned up and stayed around the apartment. He left the apartment at approximately 1:00 P.M. on June 3rd to go to the store. The police came about 10:00 P.M. that evening.

He never left the apartment other than the time he went to the store. He never entered complaining witness' apartment nor did he ever rape or take any money from her or burn her wrist with a cigarette lighter. He does not own a cigarette lighter. Eddie left him $2 so he could go to his mother's house or get something to eat. He has been friends with Eddie for twelve or fourteen years. He did not know where Eddie was at the time of trial.

On cross-examination he testified that Eddie had lived on Ingleside for six or seven weeks and that he had stayed there about three times in one month. In June 2, 1966, he was working for Early Company delivering bricks, concrete and stone for Gene Watzny Construction Company. He did not work on June 2nd or 3rd.

Eddie's relatives live in Chicago and Robbins, Illinois. He knew Eddie's brother-in-law lived in Gary, Indiana. He went out socially with Eddie and they had mutual friends.

He saw Eddie twice during September 1966. Eddie said that the lady who lived next door to him had her apartment broken into. Eddie asked him how he got involved and why he was arrested. Eddie was not with him the night he was arrested. He never asked Eddie to go to the police.

Neither Eddie nor any of Eddie's relatives were in court at the time of his trial. Eddie worked at International Harvester for four or five years and Eddie worked there on June 2 and 3, 1966.

On June 3rd Eddie came home from work about 6:00 P.M. Eddie went out that night and during the time Eddie was out he (defendant) was arrested. The first time he saw the complaining witness was on Friday evening, June 3rd, after he was arrested and she identified him as her assailant.

On redirect examination he testified that Eddie knew he was in jail for rape, burglary and robbery. He told Eddie that he was out of jail because the case was discharged.* The next thing he knew about the case was when he received a warrant on October 7, 1966, after he had served thirty days in the House of Correction on another charge. He was in custody from October 7, 1966, until December 13, 1966.

Through his attorney he tried to contact Eddie but he was unsuccessful. Eddie's mother did not know where her son was.

The trial court found defendant guilty of the rape, burglary and robbery.

*Opinion*

Defendant contends that he was not proved guilty beyond a reasonable doubt. He argues that the testimony of complaining witness is not clear and convincing and that her testimony is not corroborated by other facts and circumstances. In *People v. Adams,* 115 Ill.App.2d 360, 367, the court stated:

"Our Supreme Court has held that the testimony of a prosecutrix, uncorroborated by other witnesses, may be sufficient to justify a conviction if her testimony is clear and convincing. [Citations.] However, it is also well settled that where prosecutrix's testimony is not of such clear and convincing character, and the defendant denies the charge, her testimony should be corroborated by other facts or evidence in the case. *People v. Faulisi,* 25 Ill.2d 457, 185 N.E.2d 211; *People v. Hiller,* 7 Ill.2d 465, 131 N.E.2d 25."

In the instant case we do not believe that the testimony of complaining witness, by itself, is sufficiently clear and convincing to sustain defendant's conviction for rape. In *People v. Scott,* 407 Ill. 301, 305, the court said:

"It is a fundamental rule in such cases that in order to prove the

---

* According to the records of the Chicago Police Department, defendant was arrested on June 4, 1966, for investigation of a rape. On August 5, 1966, the case was *nolle prossed.* On October 7th a new warrant was served on defendant and the present indictment was returned by the Grand Jury on October 11, 1966. The records of the Circuit Court of Cook County show that defendant was sentenced on January 6, 1967, to a term of two to six years after revocation of probation on another charge.

charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will."

See also *People v. DeFrates,* 33 Ill.2d 190.

In this case complaining witness testified that after she saw the nude man standing over her she screamed and he grabbed her around the throat; that he threatened to harm her; and that he tore off her pajamas. However, during the next three and one-half hours complaining witness had many acts of intercourse with this man and her testimony fails to disclose any other attempted outcry or acts of resistance during this entire period of time. Complaining witness' testimony also fails to show any other action of her attacker to cause her harm, with his hands or otherwise, except for the alleged burning of her arm with a cigarette lighter which occurred after the alleged rape. However, we note that even during this episode she made no outcry for help to her neighbors on the floor nor did she attempt to resist.

Furthermore, complaining witness carried on a steady stream of conversation with her attacker while she was in bed with him. She asked him how he got into her apartment, who he was, where he lived, if he had a wife, and she told him she would not call the police once he left. She also told him that she was not getting her "kicks" because "I don't know who you are and you are not my husband."

See *People v. Hubbard,* 38 Ill.2d 104.

We would also point out that once her assailant got out of bed, some three and one-half hours later, he asked her for money and, after the alleged cigarette lighter incident, she went to the dresser drawer, opened it and took $175 from her purse and gave it to him. She made no attempt to yell or scream nor did she try to escape, even when her assailant was leaving with his bundle of clothes, cigarette lighter and money in one hand and lifting the window with his other hand. From this evidence we believe that complaining witness was not gripped nor paralyzed by fear as would have made any acts of resistance useless or foolhardy. *People v. Taylor,* 48 Ill.2d 91 and *People v. Hayes,* 93 Ill.App.2d 198.

Complaining witness' identification testimony of defendant also is not clear and convincing and is vague. In *People v. Betts,* 101 Ill.App.2d 322, 326, the court stated:

"We recognize that positive identification by one witness who has sufficient opportunity for observation may be enough to support a conviction. *People v. Burts* (1958), 13 Ill.2d 36, 147 N.E.2d 281.

However, "a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful, and uncertain. [Citations omitted.] And, where, as here, the identifying witnesses have never before observed the accused, the attendant circumstances, including the opportunity for definite identification, must be carefully weighed and considered." *People v. Cullotta* (1965), 32 Ill.2d 502, 504-505, 207 N.E.2d 444."

In the instant case complaining witness testified that she had never seen defendant before the night of June 2, 1966. She also stated that no light was ever turned on in the apartment while her assailant was there, except for the cigarette lighter.

The testimony of Officer Doty shows that complaining witness gave a description of her assailant to Lester Banks, the house manager and owner. However, Mr. Banks was not called as a witness and neither Officer Doty nor complaining witness testified regarding her having given the police a description of defendant's features, his height, weight, or other distinguishing characteristics. (*People v. Thompson*, 121 Ill. App.2d 163.) The only identification testimony is that of complaining witness' highly suggestive pre-trial confrontation identification of defendant in Eddie's apartment and her identification of defendant at trial.

In *People v. Qualls*, 21 Ill.2d 252, 257, the court in reversing defendant's rape conviction stated:

"We are constrained to say, after a careful reading of the entire record, that the testimony of the prosecuting witness lacks verisimilitude. In such instance the evidence of a prosecutrix should be corroborated by some other testimony, fact or circumstance."

██ Defendant then argues that the testimony of complaining witness is not corroborated by other facts and circumstances. It is a well established rule that prompt complaint is corroborative of a complaining witness' testimony in a rape case. (*People v. DeFrates, supra,* and *People v. Hayes, supra.*) In the instant case, however, rather than a prompt and spontaneous complaint, the evidence discloses a delay of thirteen to fourteen hours. Complaining witness testified that after her assailant left, she took a bath and douches for two hours. She then went to work but made no mention of the incident to anyone during her workday. Her first complaint was made to the house manager some thirteen or fourteen hours after the occurrence. The police were notified after she told the manager. Complaining witness justified this delay by testifying that she was not going to call the police at all because it was too embarrassing and she did not want to talk about it. However, we believe that the acts of complaining witness were not of a spontaneous

character which would corroborate her testimony of being threatened with harm and raped numerous times by a person who said he lived in the next apartment.

The State argues that the photographs of complaining witness' burned hand are corroborative of the truthfulness of her testimony. However, we would point out that complaining witness never had her hand examined by a doctor and, as she testified, she never even bandaged her hand when she went to work.

We also note that complaining witness' torn pajamas were not introduced into evidence to corroborate her claim of the violence of the attack upon her.

■■ The testimony of complaining witness not being sufficiently clear and convincing, and the State having failed to introduce any other evidence connecting defendant with the crime, we find that he was not proven guilty of rape beyond a reasonable doubt.

Since we have heretofore determined that complaining witness' identification testimony was vague and was not clear and convincing, and the State having failed to produce any other evidence of the robbery or burglary, we find that the evidence also does not prove defendant guilty of the robbery or burglary beyond a reasonable doubt. *People v. Magadanz,* 126 Ill.App.2d 335.

As we have concluded that the evidence produced by the State does not support defendant's convictions, it is unnecessary to discuss his other contentions.

The judgments are reversed.

Judgments reversed.

ENGLISH, P. J., and LORENZ, J., concur.