(No. 36845.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SALVATORE ROSSILILLI *et al.,* Plaintiffs in Error.

*Opinion filed March 23, 1962.*

Julius Lucius Echeles, Barry Goodman, and Jack Marcus, all of Chicago, for plaintiffs in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and John T. Gallagher and Dean H. Bilton, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

The grand jury of the criminal court of Cook County returned separate indictments against the defendants Rossililli and Brennan, one charging the defendants with the robbery of one Lynn Gorlick and the other charging them with the crime of rape against her. The two indictments were consolidated for trial before the court without a jury, resulting in judgments of guilty on both indictments. Each defendant has brought the record before this court for a review of the judgments of conviction.

The principal contention advanced by each defendant is that the State failed to establish their guilt beyond a reasonable doubt. The complaining witness, Lynn Gorlick, testified that she and her husband had been drinking all

night until about 3:30 A.M. At that time they met one Anthony Marchiano, a friend of Mr. Gorlick, and asked for a ride home. As she and her husband were riding in Marchiano's car, Marchiano saw the defendants, who were friends of his, and picked them up to take them to a theater. When they got to the theater, Rossililli said that he had already seen the picture and offered to give Marchiano a dollar for gas if Marchiano would drive them to 18th Street so that Rossililli and Brennan could catch a bus and go home. Mrs. Gorlick testified that as they passed 11th and State Street, Rossililli reached up in front and put his arm around Mr. and Mrs. Gorlick's necks and said that he didn't want any trouble but that he wanted Gorlick's money. According to Mrs. Gorlick, her husband started struggling with Rossililli and in the course of the struggle, Gorlick managed to get the door of the car open and he fell out. Rossililli closed the door and told Marchiano to drive on. Rossililli then pulled Mrs. Gorlick into the back seat and pushed her down on the floor. Marchiano drove for about 15 minutes or so, after which he pulled into a garage in an alley. Marchiano and Brennan left the car and Rossililli asked Mrs. Gorlick how much money she had. She told him that she had $14 which she would gladly give to him if he would let her go, but he told her that he would let her go only after she had intercourse with him. She then gave him the money and asked him to let her go and not hurt her. According to the witness, Rossililli said that he wouldn't hurt her if she did what he wanted her to do, but that if she didn't, he would not hesitate to hurt her and he would still do what he wanted to do. He then told her to take off her clothes and she refused. He pulled her up off the floor, pushed her down on the seat, pulled up her dress, took off her panties, held her down and had intercourse with her. The witness testified that Rossililli then walked outside the garage and Brennan came in and also had sexual relations with her. Rossililli and Marchiano

then came back to the garage and all of the parties got in the car and drove back toward the city and let Mrs. Gorlick off around Lake Street. Rossililli gave her a dollar for bus fare and she told him that she would not tell her husband. She then flagged down a passing car which took her to the police station where she had a conversation with her husband and the police officers and told them what had happened.

Arnold Gorlick testified that after an evening of drinking with his wife he had asked Marchiano for a ride home and Marchiano had picked up Rossililli and Brennan. He confirmed his wife's testimony concerning Rossililli's demand for the money and also testified that he fell out of the car in the course of his struggle with Rossililli. He then went to the police station and reported the incident to the police and after waiting about one-half hour, his wife came into the station.

For the defense, Rossililli testified that he had been to a movie with Brennan and Marchiano from about midnight until about 3:00 A.M., after which they went to a restaurant where they met Mr. and Mrs. Gorlick. Gorlick asked Marchiano if he would take him to buy some dope. He said that his wife, who was a prostitute, had had a good night and they both wanted to get some dope for the following morning. Rossililli testified that Mrs. Gorlick said that one of her customers had given her $40. Rossililli testified that all of the parties got in Marchiano's car and that as they were driving along Gorlick got nervous and said he didn't want to go to 31st Street anymore, but wanted to go somewhere else. According to Rossililli, Gorlick then either fell or jumped out of the car. Marchiano made a U-turn and went back to see if they could find Gorlick but couldn't find him. Mrs. Gorlick then said she wanted to go out on Madison Street to buy some dope because she couldn't go to 31st Street without her husband. They drove out Madison Street but no one was there. Marchiano then said that

he knew of another place where they might be able to obtain some narcotics and they drove there. Marchiano parked the car in an empty lot and he and Brennan left the car. Rossililli testified that at that time Mrs. Gorlick was sitting in the front seat and that he did not drag her into the back of the car. Rossililli asked her if she wanted to have intercourse and she said that she was sore from the night before and Rossililli told her that it was all right with him. He then left the car without having intercourse with Mrs. Gorlick and met Brennan and Marchiano about a half a block away. They returned to the car about 5 or 10 minutes later and told Mrs. Gorlick that they could not get any narcotics and said they would drop her off any place she wanted to go. They drove her to Lake Street where she got out of the car. She told the men she didn't have any money and Rossililli gave her a dollar. Rossililli testified that during the evening Mrs. Gorlick had given him $14 which he had given to Marchiano. Mrs. Gorlick told Rossililli that her husband had all the rest of the money. Rossililli arrived at his home later in the day and his parents told him that the police were looking for him for rape and robbery and he went down to the police station to surrender voluntarily.

Brennan's testimony was substantially the same as Rossililli's. He denied ever taking any money from Mrs. Gorlick and denied having intercourse with her. Marchiano also confirmed Rossililli's testimony.

Our duty in reviewing the record of judgment of conviction in a criminal case was stated in *People* v. *Dougard*, 16 Ill.2d 603, where it was said, page 607. "We have consistently held in many cases over a long period of years that in criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, or if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will

be reversed. It is the duty of this court to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt if that reasonably may be done, and where the entire record leaves us, as this one does, with grave and substantial doubt of the guilt of the defendant, we will not hesitate to reverse the judgment."

Our review of the record in accordance with the principles set forth in the *Dougard* case satisfies us that the judgments of conviction must be reversed. As to Brennan, there was absolutely no evidence tending to prove him guilty of either of the two charges. Even if Mrs. Gorlick's testimony is accepted in its entirety, it only establishes that Brennan had intercouse with her and there is no evidence whatsoever of any force or threats in connection therewith. There was no testimony that Brennan took any money from Mrs. Gorlick, or even that he threatened to do so. The State attempts to support the judgment of conviction against Brennan by contending that the evidence showed a common design between the defendants to commit the alleged crimes and that therefore the acts of Rossililli must be deemed to be the acts of Brennan. In support of this argument, the State relies on the case of *People* v. *DeStefano,* 332 Ill. 634. The facts in that case were entirely different from the facts here. In that case the defendant was the last of six men to have intercourse with the complaining witness and he was arrested while he was on top of the complaining witness whose clothing and person showed evidence of physical violence. There is no such evidence here.

As to Rossililli, the only testimony as to the alleged rape is the testimony of Mrs. Gorlick. The sum and substance of her testimony is that Rossililli demanded that she submit to sexual intercourse and told her he would hurt her if she did not consent; that she refused; and that Rossililli then removed her underclothing, held her down and had intercourse with her. What was said in *People* v. *Scott,* 407 Ill. 301, is appropriate here. In that case we reversed a rape

conviction and said, page 305: "It is a fundamental rule in such cases that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. (*People* v. *Meyers,* 381 Ill. 156; *People* v. *Eccarius,* 305 Ill. 62.) It is also fundamental that voluntary submission by the female, while she has power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of rape."

There is no evidence in the present case that Mrs. Gorlick's faculties or physical powers were in any way impaired, nor is there any evidence that she resisted Rossililli in any way. The evidence does not support an inference that she was so paralyzed by fear or overcome by physical force that she was powerless to resist. In a rape case, unless the testimony is clear and convincing the testimony of the complaining witness must be corroborated by the other facts and circumstances in evidence. (*People* v. *Qualls,* 21 Ill.2d 252.) The testimony of Mrs. Gorlick as to force and lack of consent can hardly be said to be clear and convincing, and her testimony on these material elements of the crime was entirely uncorroborated. This evidence is of such an unsatisfactory character as to raise a reasonable doubt as to Rossililli's guilt, and the judgment of conviction on the rape charge cannot be permitted to stand.

There is even less evidence in the record to support the robbery conviction as to Rossililli. The evidence is that while all of the parties were in the car, Rossililli put his arms around the necks of Mr. and Mrs. Gorlick and told Gorlick that he wanted his money. Some time later after Gorlick had left the car and while the car was parked in the garage, Rossililli asked Mrs. Gorlick how much money she

had and she told him that she had $14 which she would give him if he would let her go. He refused to let her go and she gave him the money. This evidence is entirely insufficient to sustain a conviction of the crime of robbery since it shows neither force nor intimidation. Bearing in mind that Marchiano, who was present, was personally acquainted with Gorlick, it would hardly seem possible that, with absolute identification, Rossililli would commit this offense.

For the reasons stated in this opinion the judgments of the criminal court of Cook County on each indictment and as to each defendant are hereby reversed.

*Judgments reversed.*