**People of the State of Illinois, Plaintiff-Appellee, v. John Milton Kepler, Defendant-Appellant.**

**Gen. No. 50,892.**

First District, Second Division.

November 4, 1966.

R. Eugene Pincham and Charles B. Evins, of Chicago (Earl E. Strayhorn, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Sammons, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was tried without a jury for the crimes of forcible rape and deviate sexual assault. He was found not guilty of sexual assault and guilty of forcible rape, and sentenced to 5 to 20 years in the penitentiary. He appeals.

The sole contention raised on this appeal is that defendant was not proven guilty beyond a reasonable doubt. He maintains that the evidence does not show the act complained of to have been forcible and against the will of the complaining witness.

Linda Linn, the complaining witness, was 20 years of age at the time of the alleged rape and lived with her mother and sister in Posen, Illinois. Miss Linn testified that about 10:30 p. m. on an evening in late October 1964, she was returning to her home from work when defendant, driving his automobile, halted her on the street. Miss Linn testified that he called her to his automobile but that she kept walking. He again called her and asked directions to Midlothian. She stated she gave him the directions and continued walking, but that defendant approached her and told her that he was new

136

in the area, that he lived alone and that he asked her several questions concerning herself. He requested her telephone number and asked if he could drive her home, but she refused. Defendant, a salesmen supervisor, then gave her his business card, on which was printed the name of his employer and defendant's name, office address and office telephone number. Miss Linn took the card and gave defendant her telephone number, "just to get away from him."

Miss Linn testified that defendant thereafter telephoned her approximately once a week for the next three weeks and that in that period she again saw him pursuant to one of the telephone calls. On this occasion Miss Linn told defendant of her dislike for her job, and defendant apparently told her he would try to find employment for her with his company. A date was made for November 9th, and approximately 8:00 p. m. on that date defendant came to Miss Linn's home and asked her if she would like to take a ride to Lockport, Illinois, where he had to contact some of his salesmen, and also to talk about her employment application. When they arrived in Lockport, defendant began making advances toward Miss Linn and attempted to kiss her. Defendant thereafter conversed with some of his salesmen, after which he and Miss Linn ate pizza in a restaurant and proceeded back toward Miss Linn's home in Posen. Enroute to Posen defendant turned off the main highway onto an unlit country road. Miss Linn testified she asked defendant where they were going and defendant stated he was taking a short cut to her home. The automobile was then driven into a driveway which led to a farm house where defendant stopped the automobile.

Miss Linn testified that she asked defendant what was wrong but that defendant did not say anything. She stated that she became angry and demanded that defendant fill out the employment application as he had promised and to take her home. She attempted to get out of the

137

automobile but defendant stopped her and took a job application from his glove compartment which he filled out. Miss Linn testified that after the application had been filled out, defendant again began making advances toward her, sitting on her lap, and putting his hands on her. Miss Linn attempted to push him off, but he was too heavy, and she attempted to reach for the door but defendant again restrained her.

Miss Linn testified that defendant then pushed her down on the front seat where he forcibly removed her boots, slacks and panties, and unbuttoned her blouse and removed her brassiere. She further testified that she was wearing tight-fitting, stretch type slacks which were looped at the bottom and tight-fitting, over-the-ankle boots which normally take two hands to put on. Miss Linn testified that she screamed and attempted to push defendant away but that he was too heavy. Defendant then squeezed her mouth, pushing her cheeks together and cutting the inside of her mouth, and beat her head against the door telling her to be quiet. Miss Linn further testified that she had long fingernails and attempted to scratch defendant's face, but that defendant grabbed her wrist and prevented her from doing so. She tried to open the door with her free hand but defendant caught hold of it, put it under him and lay on top of it. Defendant placed his forearm against Miss Linn's throat and pressed it until she could not breathe. Miss Linn testified that defendant then proceeded to have intercourse with her, first rectally and then normally.

The entire incident lasted some 45 minutes, after which defendant went to the trunk of his automobile for a jacket. Miss Linn got dressed and the two proceeded back to her home in Posen. She testified that defendant parked in front of her house and that they made a date to see each other the following night because she "was supposed to go away with him." Miss Linn told defendant to call her, said goodnight and went into the house. It was

1:00 o'clock or 1:30 o'clock in the morning. Miss Linn testified she immediately woke her mother and made complaint of what had allegedly taken place. Mrs. Linn called the police and Miss Linn was taken to the hospital for an examination. Defendant was arrested the following evening in front of the Linn residence as he was coming to see Miss Linn pursuant to the date made the previous night.

Miss Linn testified the only reason she went out with defendant was that she felt sorry for him because he said he was lonely and also because he promised to find her better employment. She also testified that her clothing was completely intact after having been allegedly forcibly removed by defendant prior to the alleged rape, and that defendant bore no marks, abrasions or the like on his person after the alleged rape.

Defendant Kepler's testimony substantially corresponded to that given by Miss Linn except as to the alleged rape. He testified that he met Miss Linn in the latter part of October 1964, when he stopped her on the street and asked her for directions. After she gave him the information, defendant asked her for her telephone number. Miss Linn gave him the telephone number and told him that it would be proper for him to call. Defendant telephoned several times and a date was made for the end of October. At this first meeting defendant met Miss Linn's mother and sister, after which he and Miss Linn went to a hamburger stand for something to eat. Miss Linn told him that her mother was constantly nagging her; she stated she wished she could find new employment and get away from home. Defendant testified that he told her he could make arrangements with some persons in his office for a job interview. He then took her home, escorted her to the door, kissed her good-night and told her he would call her in the near future.

Defendant called Miss Linn a few days later and a date was set for November 9th. On the evening of

139

November 9th they drove to Lockport in order that defendant could check on his salesmen, ate some pizza in a restaurant and returned to Posen. Prior to leaving for Lockport defendant testified that Miss Linn told him that she had to be home by 12:00 midnight. Enroute back to Posen, Miss Linn again brought up the subject of the job application and defendant pulled off the road near a farm house where they filled out the application. Defendant stated to Miss Linn that he would give it every consideration.

Defendant testified that Miss Linn was very elated because defendant was so nice to her and that she stated he deserved a kiss and kissed him. He testified that from that point they remained in a very close embrace and that he became very excited and reached a climax. He testified that Miss Linn was also excited and began unbuttoning her blouse. He stated that she proceeded to take off all her clothing and that they engaged in an act of intercourse. After the act of intercourse, defendant told Miss Linn that he would get a job for her and would help her move into an apartment away from home. Defendant then went to the trunk of his car and got a jacket as Miss Linn dressed. Enroute to Miss Linn's home the subject of her job and home situation again came up, and defendant made arrangements to pick her up the following night to go apartment hunting. They reached Miss Linn's house and defendant offered to escort her to the door, but she declined stating that her mother would be angry with her for coming home so late. Defendant testified that he then went home and was arrested the following evening in front of the Linn residence where he was pursuant to the date made the previous night. He denied having raped Miss Linn or in any way committing any act upon her against her will or by use of force or threat of force.

■ ■ The law is well settled in rape cases that the testimony of the complaining witness must either be clear

140

and convincing or must be corroborated by other facts and circumstances. People v. Rossililli, 24 Ill2d 341, 181 NE2d 114. The reason for this requirement is simply that the charge of rape is an accusation easily made, hard to prove, and even harder to be defended against by the accused. People v. Phipps, 338 Ill 373, 170 NE 305. A reviewing court will not hesitate to reverse a conviction where, after a review of all the evidence, there exists a grave and substantial doubt as to the guilt of the defendant due to a lack of credible evidence or the existence of improbable or unsatisfactory evidence. People v. Dougard, 16 Ill2d 603, 158 NE2d 596. On the entire record of the case at bar there exists a serious doubt that the act of intercourse in question was performed through force and against the will of the complaining witness.

According to Miss Linn's own testimony she and defendant met for the first time at a nocturnal street meeting, at which time she gave defendant, a stranger, her telephone number. Defendant in turn gave her his business card containing his name, business address and telephone number, and the name of the company by which he was employed. Defendant thereafter repeatedly called Miss Linn on the telephone and Miss Linn finally stated she would go out with him because she "felt sorry for him because he was alone and didn't know anyone." Defendant then visited Miss Linn at her home and met her mother and sister. Miss Linn complained to defendant concerning household, job and maternal problems and conflicts. Defendant promised to find her employment with his company and a date was made to execute an employment application on November 9th. Defendant invited Miss Linn to take a ride to Lockport with him and to execute the employment application; she agreed. When they arrived at Lockport defendant and Miss Linn dined in a pizza restaurant. After leaving the restaurant they proceeded to a lonely country road where Miss Linn pre-

141

vailed upon defendant to execute her job application. It is at this point that Miss Linn's testimony leaves grave doubt of defendant's guilt. She states that, in the small confines of the front seat of an automobile, apparently made smaller by the fact the seat was broken and pushed forward as far as it could go, defendant forcibly removed her clothing, which included tight-fitting, stretch type pants, tight-fitting boots, panties and a brassiere, after unbuttoning her blouse. (Miss Linn testified that she normally used two hands to put her boots on.) It is significant that Miss Linn testified there was not one rip, tear or break in any of her clothing, although it was allegedly removed by force. It is also significant that there is no evidence of a single scratch, abrasion or bruise on the person of the defendant, although Miss Linn said she struggled, had long fingernails, and the like. Other than Miss Linn's testimony concerning the alleged cut on the inside of her mouth, there is no evidence of a single mark or abrasion inflicted upon her by the defendant. The alleged cut on the inside of her mouth was in no way corroborated by Mrs. Linn, the hospital records or the investigating police officer, although Miss Linn was examined immediately after she made complaint to her mother. Furthermore, although Miss Linn had an opportunity to escape after the alleged rape, it appears no serious effort was made to do so; when asked if she made an attempt to flee after the alleged rape, Miss Linn stated she "thought about it." Finally, the single and most important fact which lends doubt to Miss Linn's entire story is that she and defendant made a date to see each other the following night because she "was supposed to go away with him." Such an act on her part is highly suggestive of her approval of what had transpired prior thereto. People v. Fryman, 4 Ill2d 224, 122 NE2d 573. See also People v. Buchholz, 363 Ill 270, 2 NE2d 80; People v. Tocco, 413

142

Ill 305, 108 NE2d 762. Corroborative of the fact that a date was made for the following evening is defendant's arrest in front of the Linn home on the evening of November 10th.

 The only facts which in any way tend to corroborate Miss Linn's testimony of the alleged rape are her immediate complaint to her mother and the presence of spermatozoa found in the subsequent examination. The presence of spermatozoa alone is evidence only of a recent act of intercourse. People v. Grudecki, 373 Ill 536, 27 NE2d 51. Miss Linn's immediate complaint is weakened by the facts testified to by her prior to her making the complaint and by the fact that she reached home at 1:00 or 1:30 in the morning, whereas she told defendant she had to be in by midnight. The complaint may well have been the result of a belated sense of guilt of what had transpired earlier in the evening. People v. DeFrates, 33 Ill2d 190, 210 NE2d 467. On all the facts we are unable to say that the State proved forcible rape beyond a reasonable doubt.

The judgment is reversed.

Judgment reversed.

BRYANT, P. J. and LYONS, J., concur.