**People of the State of Illinois, Plaintiff-Appellee, v. Eddie Chambers, Defendant-Appellant.**

Gen. No. 52,625.

First District, Second Division.

July 7, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert McGee, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Eddie Chambers was convicted, following a bench trial, of the offense of rape in violation of Ill Rev Stats (1963), c 38, § 11–1. Judgment was entered on the finding and he was sentenced to a term of not less than thirty nor more than fifty years in the Illinois State Penitentiary. In this appeal the defendant contends that certain fingerprint evidence was improperly admitted into evidence against him; that he was not proven guilty beyond a reasonable doubt; and that the penalty imposed is excessive.

Alvin Bell, the first witness called by the State, testified that he was the owner of Al's Action Lounge, 6911 South Halsted Street, Chicago. At approximately 1:20 p. m. on the afternoon of January 18, 1966, he was present in the lounge when the defendant entered, seated himself at the bar and ordered a shot of scotch whiskey and a beer. Bell left the premises to bring in more stock from a storage area next door. He returned to the premises and put the stock in certain cabinets. He again left the premises at 2:00 p. m., leaving Harriet LaPorte, a waitress, in charge of the premises. At the time of his departure, the defendant and two other customers were present in the lounge. Bell did not return until 5:00 p. m.

Harriet LaPorte, the prosecutrix and second witness called by the State, testified that on January 18, 1966, she was employed as a waitress at Al's Action Lounge. At approximately 1:30 p. m. on that date the defendant entered the lounge and seated himself at the bar, directly across from her, and ordered a drink. The defendant was wearing a three-quarter length leather

217

jacket, which he removed and placed on the back of the stool on which he seated himself. He also wore a green poplin jacket, maroon or red shirt, and dark pants. At this time Alvin Bell, the owner of the establishment, and two customers were also present. Bell then left the premises for a short period of time and, during his absence, prosecutrix served a shot of scotch and a beer to the defendant.

Bell again left the establishment at approximately 2:20 p. m. and the two customers left about five minutes thereafter, leaving the prosecutrix and the defendant alone in the establishment. They engaged in a conversation concerning certain rings which he was wearing and she played the jukebox at his request. The conversation continued and turned to a discussion of his favorite recording artists.

Prosecutrix further testified that she then came from behind the bar and proceeded toward the ladies rest room, located in the rear of the premises. To reach the rest room one must walk down a hall, which is three to four feet wide. While she was in the rest room, the defendant entered and placed a knife against her throat, warning her not to try to do anything or to cry out. Prosecutrix complied with his demand that she remove her clothing and pleaded with him not to hurt her. He then asked whether there was a back way out of the lounge, whether it was locked and if she had a key. She responded that the back door was secured with a padlock and she did not have a key. He told her that he thought she was lying and demanded her purse. He declined her offer to retrieve it for him and demanded to know where it was. She told him that it was in a cabinet behind the bar and while he retrieved it, she remained in the rest room. He returned to the rest room with her purse and removed her keys. He then left the room a second time and she heard him tell someone in the lounge area that the bar was closed. He again

returned to the room and told her to come out into the hall. The knife was in his right hand and he placed his right arm around her waist. He then told her to lie down on the floor in the hall and he had intercourse with her. Following the act of intercourse, he placed her back in the ladies rest room, saying that she should remain as she was, as he was coming back. She remained in the rest room until she heard familiar voices in the bar area. State's exhibit number 3 is, in her opinion, the same green jacket worn by the defendant on the day of the offense.

Finally the prosecutrix testified that the police arrived between 2:45 and 3:00 p. m. and, following a conversation with her, took her to St. Bernard's Hospital. Thereafter, she rode around the neighborhood of the bar until about 8:00 p. m. and was then taken to Billings Hospital. No medical tests were taken at either hospital. The next time she saw the defendant was on February 2, 1966, at the twenty-first district police station.

Detective Thomas Quinn of the Chicago Police Department, also called by the State, testified as follows. At approximately 3:00 p. m. on January 18, 1966, he went to Al's Action Lounge and "protected" the scene. Specifically, he "protected" a twelve-ounce Schlitz beer bottle, a drinking glass, and a shot glass until Officer O'Malley of the police department crime laboratory arrived. On February 1, 1966, he accompanied the prosecutrix to the twenty-first district station where they viewed the defendant in a five-man lineup.

Officer Arthur Castrejon of the Chicago Police Department testified that he arrested the defendant on January 31, 1966. State's exhibit number 3 is the same green jacket which defendant was wearing at the time of his arrest.

Officer Timothy Brown, the next witness called by the State, testified that he is the lockup keeper at the twenty-first district station. On February 1, 1966, he

took rolled ink impressions of the defendant's fingers. State's exhibit number 6 is the card upon which those impressions were taken. After he had fingerprinted the defendant, exhibit number 6 was forwarded to the Bureau of Identification.

Officer William J. Frost, the next witness called by the State, testified that on January 18, 1966, he went to Al's Action Lounge. There he conducted a fingerprint examination of a Schlitz beer bottle, drinking glass, and shot glass. These items were setting on the bar. His examination of the items enumerated revealed ridged impressions on the beer bottle and drinking glass. He transported these items to the police crime laboratory, where he photographed them. State's exhibit 8 is a negative of the ridge impressions found on the drinking glass and exhibit number 9 is a negative of the impression found on the beer bottle.

Joseph W. Mortimer, a fingerprint technician in the employ of the identification section of the Chicago Police Department, was called by the State and testified as follows. State exhibit number 10 is a card bearing certain rolled ink fingerprint impressions and the name of the defendant. Mortimer received this card at the identification section on February 1, 1966, through the police mails. On that same date, he compared the impressions on exhibits 6 and 10 and concluded that they were identical. He then compared the impressions on exhibit 10 with the photographs of the latent prints. He concluded that the latent print shown in exhibit 9 is identical with the inked impression of the middle finger on exhibit 10.

■ The first contention raised by defendant on appeal is that exhibit 10 was improperly admitted into evidence against him as there was no showing as to when, where, and under what circumstances those im-

pressions were made. The State has argued that the testimony of Mr. Mortimer conclusively established that the impressions on exhibit 10 were those of the defendant, and thus the admission of the exhibit into evidence was proper. While we must agree that Mortimer's testimony was sufficient to establish that exhibit 10 bore impressions made by the defendant, we are not satisfied that such a showing itself constitutes a sufficient foundation for admission of the exhibit in question into evidence. The objection by the defense to its admission on the grounds that there had been no testimony as to the time, place, and circumstances under which those impressions were taken was sufficient to raise the constitutional objection to the admission of such evidence as was upheld in the case of Davis v. Mississippi, 394 US 721, 89 S Ct 1394 (1969). Thus, without a showing that the circumstances under which the impressions were taken passed Fourth Amendment requirements, it was improper to admit them into evidence and likewise improper to permit expert testimony with respect to their comparison with other prints.

Defendant's contention that he was not proven guilty beyond a reasonable doubt has two facets. The first, which is not affected by our ruling on the fingerprint evidence, is that the corpus delicti of the offense of rape was not proven beyond a reasonable doubt. Specifically, he argues that there was no evidence of resistance on the part of the prosecutrix, that her testimony was not corroborated by medical evidence or otherwise, and that she did not attempt to escape.

 Section 11-1 of the Criminal Code defines the offense of rape as an act of intercourse by force and against the will of the female. Thus, it has been held that consent, no matter how reluctantly yielded, negatives the possibility of the existence of the element of

the offense which requires that the act be committed against the will of the female. People v. De Frates, 33 Ill2d 190, 210 NE2d 467 (1965). It is also well established however, that when resistance would be futile or extremely hazardous to the individual, proof of resistance is not necessary to support a conviction for rape. People v. Jackson, 103 Ill App2d 209, 243 NE 2d 551 (1968). We find the evidence presented by the State to be sufficient to fall within the latter rule. The prosecutrix testified that she and her attacker were alone in the establishment. He confronted her in the rear of the establishment brandishing a knife, and the only avenue of escape, even when he left her presence, was the rear door which was secured by a padlock to which she did not have a key.

█ Defendant's argument with respect to corroboration is also without merit. Prompt complaint, such as was here made to the police, is sufficient to corroborate the testimony of the prosecutrix. People v. Jackson, supra. We hold that the corpus delicti of the offense of rape was established beyond a reasonable doubt.

█ The second phase of defendant's contention that he was not proven guilty beyond a reasonable doubt challenges the sufficiency of his identification as the perpetrator of the offense. He points out that the prosecutrix did not testify to the physical characteristics of her alleged attacker, but merely described his clothing. We agree with the defendant that it would appear strange that no description of the physical characteristics would be given in a case where the prosecutrix was afforded such an excellent opportunity to view the offender. Our review of the record has disclosed, however, that the reason for this absence is that she was not asked, either in direct or cross-examination, to supply such information. Extensive cross-examination was

conducted with respect to the clothing worn by the offender, but this line of questioning was prompted by an inquiry into the clothing worn by the attacker rather than his general physical appearance.

■ Further, we do not believe that the exclusion from consideration of the fingerprint evidence of which the defendant has complained will alter the result. That evidence merely served to establish that the defendant was present in the lounge at some time and did not consequentially bear upon his identification as the offender. The identification by the prosecutrix was positive and unshaken on cross-examination. We find her testimony to be sufficient to establish that defendant was the perpetrator of the offense beyond a reasonable doubt.

■ Finally, the defendant has argued that the sentence imposed is excessive. When the sentence imposed is within the statutory limits, this court will not lightly disturb the determination of the trial court on the question of the term of the sentence. In view of the past criminal record of the defendant, we believe that the sentence imposed is justified. The judgment of the Circuit Court is affirmed.

Judgment affirmed.

McCORMICK, P. J. and BURKE, J., concur.