THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HUBERT PUTNEY, Defendant-Appellant.

(No. 70-106; )

Third District—July 13, 1971.

Jack C. Vieley, of Peoria, for appellant.

Robert S. Calkins, State's Attorney, of Peoria, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from convictions of rape and offenses relating to motor vehicles after a jury trial in the circuit court of Peoria County, Illinois. The defendant was sentenced to serve eight to twenty years in the penitentiary for the offense of rape and two to three years in the penitentiary for the offenses relating to motor vehicles.

Certain uncontradicted facts adduced during the trial of the defendant, Hubert Putney, are as follows. On the evening of June 30, 1969, Eugenia Jackson was living in a rural home near the edge of Peoria, Illinois, with her 18 month old son, Michael, and her 4 month old daughter, Chris. Mrs. Jackson was a widow, her husband having died just 28 days previously. Her home consisted of a living room, kitchen, bathroom and two bedrooms.

At approximately 10:30 P.M. as Mrs. Jackson was preparing to wash her hair she heard a knock at the kitchen door. Upon answering the door she recognized the defendant, who stated that he wanted to offer his condolences in regard to her husband's death. Upon being invited into the home the defendant drank coffee while Mrs. Jackson washed

her hair in the kitchen. While Mrs. Jackson dried her hair and sorted clothes she and the defendant watched television in the living room and discussed his recent trip to California.

Between 1:00 A.M. and 4:00 A.M. on July 1, 1969, two acts of sexual intercourse and two acts of oral copulation occurred between the parties. At 4:00 o'clock A.M. the defendant and Mrs. Jackson left the residence in a 1960 Rambler automobile which was the property of Mrs. Jackson. The two infant children were left alone in the house. After approximately four hours the defendant let Mrs. Jackson out of the car in front of her home and drove away in her automobile.

Immediately upon entering her home Mrs. Jackson called her sister requesting that she come right over because she was scared. Next she changed from the flannel nightgown which she had been wearing into street clothes, picked up her son, Michael, who was awake and then ran to a neighbor's home where she informed a Mrs. Joliff that she had been raped. The call to her sister and subsequent complaint to her neighbor occurred about 8:30 A.M. Approximately twenty minutes later a deputy sheriff responded to a call and he was told by Mrs. Jackson that she had been raped and that her car was stolen. Mrs. Jackson was then promptly taken to a hospital where she informed an examining physician that she had been raped. Tests taken at the hospital indicated recent sexual intercourse and the presence of male sperm.

On July 2, 1969, at about 5:00 o'clock P.M. a deputy sheriff spotted a red and white pickup truck which fitted the description of one wanted in connection with the defendant. The truck was occupied by two young men and was stopped by the officer approximately one block from the home of Mrs. Jackson. The defendant was a passenger in the truck and in response to questioning gave his name as George Benson and his address as the 1000 block on Blaine Street in Peoria. A set of car keys was taken from his trouser pocket and on a tab attached to the keys were written the words "1960 Rambler" and a serial number.

The Sheriff's deputies found a 1960 Rambler automobile in front of 1013 S. Blaine in Peoria. An inspection of the vehicle disclosed a license "applied for" sticker on the windshield bearing the words "Eugenia Jackson, Kickapoo Creek Road, Peoria, Illinois." On the car floor behind the driver's seat was a loaded Mossberg shotgun.

In addition to the uncontradicted facts which have been summarized there is some conflicting evidence. Mrs. Jackson testified that the defendant had been a friend of her deceased husband and had been in her home on several occasions. She stated that on one occasion the defendant had stayed all night after he had passed out from drinking and that he slept on the couch. On another occasion she related that the defendant

came to her house between the hours of 11:30 P.M. and 12:00 A.M. after her husband had departed for work claiming that he had car trouble and that he again stayed all night, sleeping on the couch. On both of these occasions the complainant's husband was not present and the defendant would remain until his arrival home from work the next morning, at which time all parties would have breakfast together. Mrs. Jackson denies having any sexual intercourse with the defendant at any time prior to the night of the alleged rape.

Mrs. Jackson further testified that on the night of the crime in question at approximately 1:00 o'clock A.M. she asked the defendant to leave and upon his refusal attempted to call the police, but that he grabbed her around the neck, threatened her with a knife and said if she screamed he would kill her and the children. She further testified that she was bound and gagged and taken to the bathroom where the gag was removed from her mouth and at knife point she was forced to perform an act of oral copulation on the defendant. However, this act did not result in a climax.

The defendant next attempted to perform an act of sexual intercourse with the complainant lying on the bathroom floor. Prior to consummating this act he untied the complainant and forced her to remove her clothing and then completed the act of sexual intercourse on the couch in the living room. The defendant permitted the complainant to put on a nightgown and after an elapse of time he demanded that a second act of oral copulation take place. Mrs. Jackson submitted to this demand and the act was consummated with the defendant having a climax. After this act the defendant took a loaded shotgun from a closet and ordered Mrs. Jackson to start her car. At this time Mrs. Jackson accused the defendant of having planned his entire conduct of the night by hiding in her back yard until visitors had left her home, at which time he then made his presence known. This infuriated the defendant and he slapped Mrs. Jackson causing a cut on her mouth. The defendant then placed the shotgun behind the front seat of the car and with Mrs. Jackson as a passenger drove to Norwood Park, Edwards and Kickapoo, Illinois. On at least two occasions the defendant demanded further acts of oral copulation but these acts were not completed because of interference by approaching vehicles. On one occasion Mrs. Jackson unsuccessfully tried to escape by hitting defendant with a bottle which was in the car. Mrs. Jackson further testified that throughout the long drive the defendant threatened to kill her and her children.

The defendant took the witness stand in his own behalf and testified that he had stayed overnight in the Jackson home during the months of April and May, 1969, that on three of these occasions he engaged in

sexual intercourse with Mrs. Jackson. On the night in question the defendant did not deny the circumstances which led to the sexual acts but claimed he engaged in two acts of sexual intercourse with complainant and that they both engaged in acts of genital contact and that everything was done not only with Mrs. Jackson's consent but at her initiation. He further stated that Mrs. Jackson asked to be taken for a ride in the automobile and that she later loaned the vehicle to him and requested that he deliver the shotgun to her deceased husband's parents.

It is regrettable that such sordid and revolting details thus revealed could not be permitted to remain buried in the record but of necessity we must recount them since they have a distinct bearing on the issues raised in this appeal.

It is the defendant's contention that his guilt was not established beyond all reasonable doubt since the evidence presented was improbable and unlikely and that the state failed to prove the acts were forcible and against the will of Mrs. Jackson.

■■ It has been stated that a female's accusation of rape is easily made, difficult to prove and even more difficult to disprove. (*People v. Scott*, 407 Ill.2d 301, 95 N.E.2d 315; *People v. Kepler*, 76 Ill.App.2d 135, 221 N.E.2d 801.) It is for this reason that reviewing courts are especially charged with a duty to carefully examine the evidence in rape cases. (*People v. Kazmierczyk*, 357 Ill. 592, 192 N.E. 657; *People v. Scott*, *supra*.) The law is well settled in rape cases that the testimony of the complaining witness must either be clear and convincing or must be corroborated by other facts and circumstances. *People v. Rossililli*, 24 Ill.2d 341, 181 N.E.2d 114; *People v. Kepler, supra*.

Because Mrs. Jackson was the only prosecution witness who could testify as to everything that transpired on the night of the alleged rape, the defendant contends she is not a credible witness and her testimony was improbable and unlikely. During the course of the defendant's trial the jury heard the testimony of Mrs. Jackson and eleven other witnesses who testified on behalf of the People. Five persons including the defendant testified on his behalf. In determining which witnesses were telling the truth the jurors had the right to consider the manner in which the witnesses testified as well as their conduct and demeanor on the witness stand. (*People v. Bote*, 379 Ill. 245, 40 N.E.2d 55.) In the case before us on appeal the jury found the defendant guilty of the crime of rape, so it is apparent that the testimony of Mrs. Jackson rather than that of the defendant was believed.

■■ We now direct our attention to the testimony of Mrs. Jackson for the purpose of determining whether it was sufficient to sustain a conviction of the crime of rape. Her testimony alone, although contra-

dicted by the accused, is sufficient to convict him if it is positive. (*People v. Dailey*, 41 Ill.2d 116, 242 N.E.2d 170.) It is unnecessary for us to determine whether or not Mrs. Jackson's testimony needed corroboration because the record discloses that ample support of her testimony was present. After leaving the defendant Mrs. Jackson promptly complained to her sister, to her neighbor, a deputy sheriff and a physician that she was scared and that she had been raped. Prompt complaint is sufficient to corroborate testimony of rape victim. (*People v. Chambers*, 127 Ill. App.2d 215, 262 N.E.2d 170.) Medical tests promptly administered to Mrs. Jackson indicated recent sexual intercourse and the presence of male sperm. (See *People v. Jackson*, 24 Ill.2d 226, 181 N.E.2d 66.) The knife brandished by the defendant was given to a deputy sheriff and was admitted into evidence by the trial court. The loaded shotgun found in the car driven by the defendant and which was used to intimidate the victim was also identified and admitted into evidence. Further the record fails to explain or shed any light upon the conduct of the defendant when he used the fictitious name of George Benson when he was apprehended by officers of the law. If the defendant thought that the occurrences of the evening of June 30 and the morning of July 1, 1969, were harmless and performed with the consent of Mrs. Jackson then there would be no purpose in his use of a fictitious name and address when he was stopped and interrogated by law enforcement officers. The defendant's deceptive conduct corroborates the victim's testimony that the sexual acts complained of were forcible and against her will. As we have stated, a female's accusation of rape is easily made and unfortunately the accusation is frequently made by an errant wife or a young girl who wants to escape the wrath of her parents. In the case before us Mrs. Jackson did not have to account for her actions to a husband because she was a widow. She was not living with parents but maintained her own home where she lived with two infant children. We cannot surmise what was in the minds of the defendant or Mrs. Jackson, for we are bound by the evidence legally adduced during the course of the trial, but we cannot let go unnoticed the fact that Mrs. Jackson had no motive for making an unjustified accusation of rape.

■■ The defendant contends that there is no proof that Mrs. Jackson resisted his advances. The law is well settled that resistance to his demands is not necessary if the act would be futile or would endanger her life or the lives of others or if she is overcome by superior strength or paralyzed by fear. *People v. Smith*, 32 Ill.2d 88, 203 N.E. 879; *People v. Chambers, supra.*

The defendant claims that the evidence presented by the state was improbable and unlikely and in support of this contention cites the case

of *People v. Barfield*, 113 Ill.App.2d 390, 251 N.E.2d 923. In the *Barfield* case the prosecutrix testified that during a two and one-half hour period the defendant had committed six acts of forcible intercourse on her along with two acts of cunnilingus. In reviewing a conviction for rape in the *Barfield* case the reviewing court said:

"We find that such testimony, both as to the number of sexual acts committed with a resisting woman and as to the amount of physical activity, all occurring within such a brief period of time, was highly improbable and contrary to human experience. Her testimony was so unreasonable as to raise substantial doubt as to its veracity."

The defendant attempts to find a similarity between the *Barfield* case and the case before us for review. It is this contention that made it necessary for us to recite in considerable detail the testimony adduced during the trial. The defendant claims Mrs. Jackson testified that from 1:00 o'clock A.M. to 3:45 A.M. two acts of forcible intercourse were committed on her along with two acts of oral copulation and that she performed four or five further acts of oral copulation while she was riding in the car with the defendant. According to the defendant's computation he would charge Mrs. Jackson with having thus testified to eight or nine sexual acts within a seven hour period. The record does not support such testimony. In fact, prior to leaving the house the testimony reflects that there were only two consummated or completed sexual acts. While in the car the testimony discloses that none of the attempted sexual acts resulted in a climax. We do not agree that the *Barfield* case is controlling for the conduct in the case before us was not such as to be highly improbable and contrary to human experience.

It is the function of the jury in the first instance to determine the weight of all evidence and credibility of the witnesses. (*People v. Hanserd*, 125 Ill.App.2d 465, 261 N.E.2d 317.) It is only in the event that the evidence is so unsatisfactory as to raise a reasonable doubt that the reviewing court will reverse the decision of the jury. (*People v. Wilson*, 1 Ill.2d 178, 115 N.E.2d 250.) The insufficiency in the evidence is not shown by mere conflict in evidence. (*People v. Davis*, 10 Ill.2d 430, 140 N.E.2d 675.) The jury was in a far superior position to determine whether or not Mrs. Jackson was telling the truth. (*People v. Murphy*, 124 Ill.App.2d 71, 260 N.E.2d 386.) Upon review we cannot conclude that the testimony of Mrs. Jackson was so unsatisfactory or untruthful that a reasonable doubt exists as to the guilt of the defendant.

Defendant argues that to find him guilty for the offenses relating to motor vehicles the People must prove title to the vehicle in someone other than defendant and that this can be done only by offering into evidence the vehicle's certificate of title. Ch. 95½, par. 4—103(a), Illinois

974

Revised Statutes 1969, is the applicable statutory law on this question and is as follows:

"Par. 4—103. Offenses relating to motor vehicles and other vehicles— Felonies. It is a violation of this Chapter for:

(a) A person not entitled to the possession of a motor vehicle or other vehicle to receive, possess, conceal, sell or dispose of it, knowing it to have been stolen or converted;"

■■ The statute which the defendant was charged with violating does not require proof of ownership but instead presents the issue as to whether or not the defendant had a right to possession of the motor vehicle. The testimony clearly established that the defendant did not have a right to the possession of Mrs. Jackson's automobile. We find no merit in this argument advanced by the defendant pertaining to his conviction for the crime of offenses relating to motor vehicles.

We are of the opinion that the jury was justified in finding the defendant guilty and find no reversible error in the record. Therefore the convictions of the defendant by the circuit court of Peoria County are hereby affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.