THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT ANDREW REESE, Defendant-Appellant.

(No. 57622;

First District (5th Division)—October 12, 1973.

Miller and Pomper, of Chicago, (Dale W. Broeder, Arthur J. O'Donnell, and Ronald P. Alwin, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In a bench trial defendant was found guilty of rape and sentenced to a term of four to eight years in the Illinois State Penitentiary. On appeal he contends: (1) the State failed to prove beyond a reasonable doubt he was the offender described to the police by the complaining witness and charged in the indictment; (2) the uncorroborated testimony of the complaining witness does not support his conviction; (3) Illinois' rape statute impermissibly discriminates against males in violation of the equal protection clause of the Fourteenth Amendment and Article I, Section 18 of the Illinois Constitution of 1970; and (4) he did not knowingly and intelligently waive his constitutional right to a trial by jury.

The complaining witness, Octavia Mitchell, testified that on June 20, 1968, at approximately 9:30 A.M., she went downstairs to check her mailbox. Finding no mail, she walked to the front of her courtyard building located at 4438 W. Jackson Street and talked to a neighbor for approximately fifteen minutes before walking back to the entrance of her apartment building. Upon entering the vestibule (the hall between the outer

door of the building and the interior door leading to the stairway) she noticed a man walking up and then down the stairway leading to her second floor apartment and she stopped in the vestibule. That person then came through the interior door and as he passed her, he whirled and put a knife to her neck. She stated that she could see her assailant's face from the time he opened the interior door of the vestibule until he walked past her, because daylight came into the vestibule through the glass paneled single outer door. She later identified the defendant as her assailant. Defendant told her he was taking dope and that she had better do as he said or he would kill her. He took her through the stairway door to a dark corner beside the stairway "about as large as a closet, a good size closet" where he told her to take off her clothes, but she testified she was unable to do so because she was shaking too much. While still holding the knife to her neck, he removed her clothing and then raped her. Afterwards he said he would kill her if she called the police. On his way out of the building, she watched him, with his back to her, straighten his clothes in the vestibule and then, after straightening her own clothing, she went to the front of the building and observed defendant as he walked to the south side of Jackson Street onto a porch of a building. At this time she asked the neighbor she had talked to earlier to come outside and she related what had happened. The neighbor was then asked to watch the building defendant had entered and she went to her apartment and called the police. The police came and took her to Cook County Hospital where she was examined.

Over two months later, on August 31, 1968, at approximately 5:00 P.M., she was walking down the Jackson Street alley when she happened to turn around and for a "split second" saw the man who raped her. He was walking behind her. He then walked through a gangway toward Jackson Street. She took another route and came within a few feet of her assailant at the corner of Jackson and Kilbourn. At that time the sun was shining and she saw his face. She was certain he was the man who raped her on June 20, 1968. She tried to follow him, but was unable to keep pace and she returned to her apartment and called the police. After waiting ten minutes for the police, she left and walked around the neighborhood and again observed him about a block and a half away. A short time later she stopped a police squad car and, while talking to the police officer, she saw the man again, the defendant. She pointed him out to the officer who arrested him. She stated that on the day of the rape defendant's hair was cut short, was not in a "natural", that he was not wearing sunglasses and that he did not have anything covering his face. When she saw defendant on August 31, 1968, he was not wearing sunglasses and he did not have anything covering his face.

On cross-examination the complaining witness testified that it was light enough to see in the vestibule and, although the stairway itself was dark, she could see her assailant's face for a few seconds when he opened the door to the vestibule and walked toward her, but could not see his face in the dark area where the rape occurred. Defendant's counsel then attempted to refresh her recollection of the description she gave to the police; that her assailant was about 5'9" tall and weighed approximately 145 pounds. She was uncertain whether she told the police he was 5'9" or 5'10" tall, but did remember describing him as being about 29 years old. She also told the police that she tried to estimate her assailant's height while he straightened his clothes in the vestibule after the attack and again as he crossed to the south side of Jackson Street.

Officer Charles Wos, called by the State, testified he interviewed the complainant who stated her assailant was about 25 years old. He also stated that at the time of the arrest, the defendant lived at 4443 W. Wilcox, one block north of Jackson, and was 6'2" tall and weighed 170 pounds and that his hair was "more close cropped to the skull" than it was at the time of the trial, three years later.

A stipulation was entered into that if Dr. Idewa were called to testify he would state that he examined Octavia Mitchell on June 20, 1968 at the Cook County Hospital, and the smear test performed was positive for sperm. It was also stipulated that the defendant was 20 years old at the time of the trial in 1971.

Freddie Reese, defendant's mother, testified: that defendant was home sleeping on the morning of June 20, 1968; that she remembered having trouble waking him because he had been up late the evening before celebrating his brother's graduation the day previous; and that on June 20, 1968 defendant didn't leave the house until approximately noon.

Defendant testified: that on June 20, 1968 he was asleep until about noon or 1:00 P.M.; that he did not leave his house until approximately 1:00 P.M.; that he did not go to complainant's apartment building nor did he see the complainant that day; that he never attacked the complainant; and that he was 6'2" or 6'3" tall and weighed approximately 155 or 160 pounds on June 20, 1968.

On cross-examination defendant testified: that on the evening of June 19, 1968 he was with his mother and his brother's friends and that his mother and brothers were home with him on the morning of June 20, 1968; that on August 31, 1968 he was not in the alley behind 4400 West Jackson and he did not enter the gangway leading from that alley to Jackson Street, although at approximately 5:00 P.M. he was on Jackson Street on his way to his sister's house; and that the first time he saw complainant was when he was arrested.

## OPINION

Defendant first contends that the State failed to prove his guilt beyond a reasonable doubt. We note that the complaining witness observed her assailant's face for only a few seconds as he came into the vestibule from a stairway, a distance of approximately four steps. She also stated that daylight entered the vestibule through the glass paneled outer door and that at the time of the attack no electric lights were on, either in the vestibule or in the stairway area where the attack occurred. She could not see her assailant's face when she saw him on the stairs before the attack and she could not see his face during the attack. She did not see his face as he straightened his clothes, either in the vestibule after the attack, or as he walked to the south side of Jackson. He also points to the discrepancies between the description she gave the police of her assailant, namely, 29 years of age, 5'9" or 5'10" tall, and weighed 145 pounds and defendant's testimony that he was 17 years of age, 6'2" or 6'3" tall, and weighed between 155 and 165 pounds on June 20, 1968, which was corroborated, to some extent, by the police report of his arrest on August 31, 1968 showing he was then 6'2" tall and weighed about 170 pounds.

We note also that the complaining witness did not see or recognize her assailant from the day of the alleged attack until August 31, 1968, more than two months later, when, while walking in an alley, she turned around and saw defendant for a split second, recognizing him as her assailant. At that time he was wearing different clothing (a green sweater, whereas it was her testimony that her assailant was wearing a black shirt and green pants).

■■ From our examination of the testimony of the complaining witness we conclude that it lacks the attributes of being clear and convincing. She had limited time, a few seconds, to view the face of her assailant, under poor lighting conditions. She did not identify him for more than two months when she saw him for only "a split second" when he was wearing different clothing. These circumstances considered with: (1) the fact she had no particular reason to examine the facial features of her assailant during the few seconds she saw him in the vestibule before the attack; (2) the fact that from where she was standing in the vestibule she saw his face while he walked only two or three feet; (3) the fact that she was unable to see his face during and after the offense; (4) the discrepancies of height and age between her description to the police and defendant's actual physical characteristics; and (5) the general lack of corroboration, all indicate a lack of an adequate opportunity for a positive identification of the defendant as her assailant.

■■ In rape prosecutions it has been held that although the testimony of

a complaining witness is uncorroborated by other witnesses, it is sufficient to justify a conviction if her testimony is clear and convincing. (*People v. Strong*, 120 Ill.App.2d 52, 256 N.E.2d 76.) However, where her testimony is not of such clear and convincing character, as we believe it not to be here, and defendant denies the charge, as he did here, her testimony should be corroborated by other facts or evidence in the case. *People v. Morrow*, 132 Ill.App.2d 293, 270 N.E.2d 487.

The State contends complaining witness' testimony was sufficiently corroborated for the reasons (1) she made an immediate complaint to both a friend and the police who took her to a hospital for examination and (2) a smear test taken at the hospital was positive for sperm. It is a well established rule that a prompt complaint is sufficient to corroborate testimony of a rape victim. (*People v. Putney*, 132 Ill.App.2d 967, 271 N.E.2d 685.) Here, the complaining witness testified she told her neighbor she had been raped, however, the neighbor did not testify. She also testified she called the police who took her to the hospital, however, no policeman testified to any complaint of rape being made, neither did any doctor nor hospital employee testify in this regard. Officer Wos, the only police officer who testified, stated he received an assignment and interviewed the complaining witness but the record does not disclose when this interview was conducted nor did he testify that she made any complaint to him. He and the complainant were the State's only witnesses.

■■ We are cognizant that the State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution. (*People v. Blanks*, 13 Ill.App.3d 527, 301 N.E.2d 117.) However, where the testimony of the complaining witness is not clear and convincing, some of the many witnesses who appear to be in a position to corroborate the testimony of the prosecuting witness should be called to testify. (*People v. Williams*, 69 Ill.App.2d 71, 216 N.E.2d 467.) See also *People v. Trobiani*, 412 Ill. 235, 106 N.E.2d 367, where at p. 240 the court stated:

> "Although corroboration is unnecessary to sustain a conviction for rape where the testimony of the prosecutrix is clear and convincing, [cases cited] we are of the opinion that upon the new trial, some, at least, of the many witnesses who appear to be in a position to corroborate the testimony of the prosecutrix as to her physical condition as a result of the beating she received, should be called as witnesses by the People."

■■ We find no corroborative evidence here that a prompt complaint was made by the complainant and it appears that the positive sperm

test is the only evidentiary fact tending to corroborate complainant's testimony. However, under the circumstances here, where the record does not disclose any complaint of rape to the doctor or to any hospital employees, the presence of spermatozoa is not corroborative of rape but is evidence only that there had been a recent act of intercourse, *People v. Kepler,* 76 Ill.App.2d 135, 221 N.E.2d 801.

■■ It is true that in a bench trial, it is the responsibility of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony and, unless the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt, the finding of the trial judge will not be disturbed. *People v. Council,* 11 Ill.App.3d 972, 298 N.E.2d 6; *People v. Catlett,* 48 Ill.2d 56, 268 N.E.2d 378.

However, where the evidence of guilt is doubtful and uncertain, as we believe it to be here, and the explanation offered by defendant is positive and unimpeached, as we believe it was here, it then becomes our duty to reverse the conviction, as we do here. *People v. Gardner,* 35 Ill.2d 564, 221 N.E.2d 232.

Concerning the question of the constitutionality of the applicable statute, we have examined the entire record and find this issue was not raised in the trial court and is being raised here for the first time. Since this is the first point at which the constitutionality issue has been raised, we will not consider the question here. *People v. Amerman,* 50 Ill.2d 196, 279 N.E.2d 353; *People v. Eubank,* 46 Ill.2d 383, 263 N.E.2d 869.

We turn now to the contention of defendant that this matter should be reversed without remandment and we note this question was exhaustively reviewed by this court in a supplemental opinion on petition for rehearing in *People v. Brown,* 99 Ill.App.2d 281, 292-303, where, at p. 292, it was stated:

> "[T]he issue now presented is whether the State should be allowed a second chance to meet its burden of proof in a case in which (1) it had failed to adduce sufficient evidence to support a conviction at the trial, and (2) no material evidence offered by the State had been erroneously excluded or stricken. We are convinced that the State is not entitled to this kind of opportunity to rehabilitate its case at the expense of defendant's right to acquittal on the evidence which the State did see fit to present."

And at p. 293:

> "Defendant in this case exercised his constitutional right to appeal his conviction, and, in so doing, he did not ask for a new trial. Having succeeded in establishing in this court that the trial judge should have acquitted him for failure of the State to prove its case, the defendant should be in no worse position than he would

have been if he had been properly acquitted at the time of trial.[2] We believe that it would be within our authority to reverse and remand with direction to enter a judgment of acquittal, but the legal effect would be the same as that accomplished by a simple reversal here.

■■ We have reversed the conviction here because the evidence was insufficient and from our review of the record it appears there was no material evidence offered by the State which had been erroneosuly excluded or stricken. We note here that a motion for new trial was filed and denied in the trial court; however, on appeal defendant seeks only outright reversal and, although the record discloses there were persons who might have corroborated portions of the testimony of the complaining witness, we believe the facts here to be analogous to and controlled by the reasoning in *People v. Brown, supra,* which also involved a rape charge. Accordingly, to protect defendant's fifth amendment right against double jeopardy, we conclude there should not be a retrial.

In view of this holding, it will not be necessary to pass upon the question of whether the defendant knowingly waived his constitutional right to a jury trial.

For the reasons stated, the judgment is reversed.

Reversed.

ENGLISH and LORENZ, JJ., concur.

---

[2] We can see no essential difference—except one of unfairness—between a defendant who is acquitted at trial and one who has to appeal to obtain reversal of a conviction on the ground of insufficient evidence. Surely, it would compound the unfairness to require that the latter also submit to a retrial."