THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS HENLEY, Defendant-Appellant.

First District (5th Division) No. 61611

Opinion filed February 13, 1976.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Following a bench trial, defendant was found guilty of rape, deviate sexual assault, and robbery. He received concurrent sentences of 4 to 12 years on each charge. On appeal, he contends that the complainant's testimony was so improbable and unsatisfactory as to create a reasonable doubt of his guilt on each of the charges.

At trial, the complaining witness, Mrs. Wade, testified that she had just left a cocktail lounge where she had been waiting two hours for a friend who never arrived. While there, she had only one beer and, after leaving, she walked in a westerly directions with her head "slightly down." As she crossed an alley, she raised her head and noticed she was surrounded by three young men. One of the three, whom she later identified as defendant, grabbed her purse and said, "This is a stickup." As he grabbed her purse, the others stood close by with their hands under their coats. There were no other persons in the vicinity.

She was then told to walk down the alley with one of the youths positioned on each side of her and the other following. They walked her for about half a block down the alley, when they stopped at an alcove in the building which housed the closed Regal Theatre. There they told her to remove her clothes, and when she refused defendant "started to pull them off." He first took her coat off and threw it on the ground. He then unbuttoned her pantsuit and removed all of her clothing except her brassiere and also threw these articles on the ground. They then went through her handbag, looking at her bank book and finally removing her coin purse, which contained slightly over one dollar.

Defendant then ordered her to lie down and forced her to have intercourse while the other two stood in front of the alcove. After defendant had finished, his companions each took turns having intercourse. Each merely unzipped his pants but did not remove any clothing. After the other two had intercourse with her, defendant told them to "get lost." They walked only a short distance down the alley, but she knew they

remained in the vicinity because she continued to hear them talking. Defendant then forced her to have intercourse again and, while she was still on the ground, he also made her submit to an act of oral copulation. She then heard some noise coming down the alley, and defendant "jumped up" and said, "Please don't tell" and he ran from her. At this point, she noticed two police officers coming down the alley. She dressed while the police apprehended defendant and the other two youths and, within two or three minutes after they arrived, she told the police that she had been raped—after which they took her to Michael Reese Hospital. Although her handbag was recovered, the coin purse which she said the men had removed was never found. She knew it was in her handbag prior to that time, because she had it just a "few minutes before" while she was in the cocktail lounge.

One of the two police officers who arrested defendant testified for the prosecution that they were on routine patrol when he heard noises and voices in the alley. When they drove in, he observed three men and a woman and then saw two of the men run and hide behind some garbage cans. They came out on his order and were placed against the wall. At the same time, he ordered defendant to come out of a doorway where he had gone. When defendant came out, he was zipping up his pants. While he and his partner searched the men, he observed Mrs. Wade putting on her clothing. She had been wearing only a brassiere when they arrived and she appeared "shook up," with her hair disarrayed and her body covered with dirt. He did not talk to her until she finished dressing, at which time she stated she did not know the three men and that they had raped her. At the hospital, she told the officers that defendant had also forced her to submit to oral sex.

On cross-examination, it was developed that defendant told the officer in the alley that Mrs. Wade was a friend of his. The officer also stated that none of Mrs. Wade's property was recovered from defendant and that her coin purse was never recovered.

The other police officer testified that he was driving the squad car and when they entered the alley he saw four people in a group, fairly close together, and that three males "ducked away." He admitted previously saying that four people had ducked away.

Defendant testified that he was 16 years old, and on the evening in question Mrs. Wade called to him as he was walking home with two friends. She asked him if he had any money, and he answered that he had none. When she said she wanted sex, his two friends told her they had money. They talked to her and then told him she was going to sell her body. She then told the other two to come with her, and he followed them down the alley. Neither he nor his friends took off any of her

clothing. She removed her own clothing and asked who would be first. He then had intercourse with her and was followed by his two friends. He also "had oral sex" with her and almost immediately thereafter the police arrived. As they approached, he tried to hide because he knew "the act of prostitution was illegal." The police stood them up against the wall and they then talked to Mrs. Wade. About two minutes had elapsed from the time the police arrived until the officers talked to her. He stated that neither her nor his friends touched her handbag, although he did see her put it down next to where she had laid her clothing. When he first talked to the police, he told them that Mrs. Wade was a friend of his.

OPINION

■■ As a general rule, the testimony of a complaining witness alone is sufficient to sustain a conviction of sex offenses where her testimony is clear and convincing, even though it is contradicted by the accused. (*People v. Halteman*, 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Barksdale*, 24 Ill. App. 3d 489, 321 N.E.2d 489; *People v. Reese*, 14 Ill. App. 3d 1049, 303 N.E.2d 814.) However, when the testimony of the complaining witness is not clear and convincing, corroboration by other facts or evidence is required to sustain a conviction. (*Reese*; *People v. Morrow*, 132 Ill. App. 2d 293, 270 N.E.2d 487.) In this regard, a prompt complaint has been held to constitute sufficient corroboration. *People v. Sims*, 5 Ill. App. 3d 727, 283 N.E.2d 906; *People v. Putney*, 132 Ill. App. 2d 967, 271 N.E.2d 685.

■■ Here, the testimony of Mrs. Wade and defendant was substantially similar, differing only as to whether force was used. She testified that defendant raped her twice and forced her to perform an act of oral copulation. Corroboration appears from her statement to the police within two or three minutes after they arrived that she had been raped. She also stated that the men took her coin purse, which had a little over one dollar in it. Defendant testified that she solicited them for sex; that she willingly had intercourse with all three of them; that he had intercourse with her only once; and that she had willingly orally copulated him. He also testified that he saw her place her handbag on the ground next to her clothing, although denying that either he or his two friends had taken anything from her.

■■ In a bench trial, it is the duty of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony. On review, the trial court's judgment in this regard will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Catlett*, 48 Ill. 2d 56, 268 N.E.2d 378;

*People v. Pointer*, 6 Ill. App. 3d 113, 285 N.E.2d 171.) Here, the trial judge chose to believe the testimony of Mrs. Wade as to whether force was used rather than that of defendant, and from our review of the record we cannot say that the evidence underlying the three charges was so unsatisfactory as to leave a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment is affirmed.

Affirmed.

BARRETT and DRUCKER, JJ., concur.