THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY PATTERSON, Defendant-Appellant.

First District (3rd Division) No. 60903

Opinion filed November 6, 1975.—Rehearing denied January 9, 1976.

2

James J. Doherty, Public Defender, of Chicago (Donald Paull and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Raymond J. Prosser, and Mary Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Larry Patterson was indicted for the crimes of murder and armed robbery. He pleaded guilty to voluntary manslaughter and armed robbery and was sentenced to concurrent terms of 10 to 20 years for the manslaughter and 5 to 10 years for the robbery. He did not appear.

Nine months later, Patterson filed a *pro se* post-conviction petition. Counsel was appointed to represent him and an amended petition was filed. The amended petition alleged that the trial judge failed to comply with Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402) before accepting his guilty pleas, that he was coerced into entering the pleas of guilty by the statements made by his counsel, and that his minimum sentence is excessive. Upon motion of the State, the trial court dismissed the amended petition without an evidentiary hearing.

■■ Patterson first contends that the court erred in denying his petition because the State neither answered the petition nor moved to dismiss it within 30 days of its filing as required by statute. (Ill. Rev. Stat. 1971, ch. 38, par. 122—5.) This contention was not made in the trial court and, therefore, cannot be raised on appeal. *People v. Reese* (1973), 14 Ill. App.3d 1049, 303 N.E.2d 814.

Patterson's second contention is that the affidavits attached to his petition indicated that his plea of guilty to voluntary manslaughter was coerced by his counsel. The affidavits were those of his sister and mother. They stated that his counsel originally informed them that the State did not have a good case, but shortly before trial he told them that two codefendants, John and Kenneth Moore, would testify against the defendant and that Ann Jenkins and Joyce Scott would be used as witnesses; that there was a solid case against the defendant and if he did not plead guilty, the State would seek the death penalty. He subsequently said that the defendant would receive a sentence of 50 to 100 years. The affidavits stated that they later talked to Joyce Scott who informed them that she was not supposed to testify at Patterson's trial. Also attached to the amended post-conviction petition was a notarized letter from her which stated that she never intended to testify at the trial and that what she could say would not be of any use to the court.

■■ In order to require a hearing a post-conviction petition must make a substantial showing that the petitioner's constitutional rights have been violated. (*People v. Ashley* (1966), 34 Ill.2d 402, 216 N.E.2d 126.) The fact that the defendant entered a plea of guilty based upon the advice of his counsel does not demonstrate that his plea was coerced. Similarly, the fact that Joyce Scott, one of the four State's witnesses, subsequently said that she did not wish to testify and would have nothing to say if she were called to the witness stand, was but her conclusion and does not substantiate the assertion that the defendant's counsel improperly coerced him into entering a plea of guilty. The record shows that Patterson, represented by privately retained counsel, entered a negotiated plea of guilty after a pretrial conference with the court and that he knew the exact sentence he would receive prior to his plea. The allegation of

4

coercion in the amended petition was insufficient to require an evidentiary hearing.

■■ Patterson's next contention is that the trial court did not admonish him as to the nature of the charges against him, failed to determine whether his pleas of guilty were voluntarily made and failed to ascertain whether there was a factual basis for them. We find no merit in the first two points. Patterson was informed of the charges by name, admonished as to the consequences of his pleas and told the possible sentences he could receive. The report of proceedings of the defendant's guilty pleas which was attached to the State's motion to dismiss discloses that the pleas were entered understandingly, knowingly and voluntarily. There was substantial compliance with the requirements of Rule 402 as to points one and two. The third point, however, has merit and calls for a more extended discussion.

Subparagraph (c) of Rule 402 provides that a trial court shall not enter final judgment on a plea of guilty without first determining that there was a factual basis for the plea. There is no affirmative indication in the record that the trial court ascertained that there was a factual basis for Patterson's plea of guilty to either voluntary manslaughter or armed robbery. Although the prosecutor informed the court that the witnesses and the investigating officer were present, no witnesses testified as to either crime and there was no stipulation as to what their testimony would have been. The prosecutor did not state the facts and none were elicited from the defendant. The court made no comment about them nor read a presentence report which might have contained them. Nothing was said in the courtroom about who was killed or who was robbed, or as to when and where the crimes occurred.

On the surface, the record is devoid of any sign of compliance with Rule 402(c) save for one thing: the guilty pleas and the penalties to be imposed in exchange for them were agreed upon in a conference in which the court, the prosecutor and the defendant's attorney participated. Normally, these conferences are held in chambers and are off the record, except that since 1970 a synopsis of what was agreed upon must be stated in open court. Rule 402(b), (d)(2).

The latter was done. In the presence of Patterson and his mother and sister, his attorney stated that he had conversed with the court and the State's attorney regarding a negotiated plea to voluntary manslaughter and that based upon these conversations his client wished to change his plea from not guilty to the murder charge to one of guilty to the lesser included offense of voluntary manslaughter. The prosecutor acknowledged his participation in the conference and his willingness to accept the plea of voluntary manslaughter. The court asked the defendant if

he knew about the conference. He answered that he did and the court proceeded to admonish him as to his constitutional rights and sentenced him in accordance with the understanding reached at the conference. In response to the court's inquiry the defendant said that he knew what his sentence would be before he came to court.

Due to an oversight, the armed robbery charge was not disposed of until the following day. Patterson pleaded guilty to the offense and was again admonished. He persisted in his plea and the negotiated sentence of 5 to 10 years in the penitentiary was imposed. Once more, there was no ostensible disclosure that a factual basis existed for the plea.

In order to find that the trial court determined that there was a factual basis for either of the guilty pleas, it would have to be presumed that the court received sufficient information at the conference to make this determination. Generally, this would be a safe presumption. Before agreeing to impose a specific sentence, a court normally requires a recitation of the facts, the evidence against the defendant, mitigating circumstances and the defendant's age, background and criminal record. But if the presumption that this was done were indulged in every one of the hundreds of cases in which there is a negotiated plea, the requirement of Rule 402(c) would be substantially nullified. We therefore hold that the fact that there has been a negotiated plea does not of itself justify an inference that there has been sufficient compliance with the rule.

However, we distinguish between Patterson's two pleas of guilty. There can be no such presumption as to the negotiated armed robbery plea, but there can be as to his plea of guilty to voluntary manslaughter. The robbery conference was routine, the manslaughter one could not have been.

Patterson was indicted for murder. On the day of his trial the defendant's private counsel, the assistant State's attorney and the court conferred. At this conference it was agreed that the murder charge would be reduced to voluntary manslaughter, that he would plead guilty to this offense and that the sentence he would receive would be no less than 10 nor more than 20 years. Before consenting to the reduction of the murder charge, the court necessarily had to determine if the facts encompassed either of the two conditions for voluntary manslaughter: whether the defendant acted under a sudden and intense passion resulting from serious provocation, or killed under the unreasonable belief that it was necessary to prevent imminent death or great bodily harm to himself or another person. (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(a), (b).) Before agreeing to impose a specific sentence upon the defendant the court had to be informed of the degree of his participation in the homicide as compared to his codefendants who had cooperated with the State and were

prepared to testify against him and who, pursuant to this understanding and their negotiated pleas, pleaded guilty to robbery and were placed on probation.

■■ It is a fair and logical presumption in these particular circumstances, where the reduction of the charge—to an offense not mentioned in the indictment—could not have been made without the court's approval, that the judge received enough information at the conference to justify its results and to satisfy himself that the alleged crime took place and that the defendant was guilty of it.

■■■ Patterson's final contention is that his minimum sentence of 10 years for voluntary manslaughter is improper under the Unified Code of Corrections since voluntary manslaughter is a Class 2 felony (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) the minimum penalty for which is a term which cannot exceed one-third the maximum (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3)). The Unified Code of Corrections became effective January 1, 1973. The Code provides that it applies to any prosecution occurring prior to the effective date of the Act if the case being prosecuted has not reached the stage of final adjudication. (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4.) Patterson was convicted in February 1972 and did not appeal; his conviction therefore became final prior to the effective date of the Code and he is not entitled to the benefits of the Code.

The dismissal of the defendant's post-conviction petition is affirmed insofar as it pertains to voluntary manslaughter. The dismissal is reversed insofar as it pertains to armed robbery. The cause is remanded with directions to grant the relevant part of the petition and permit the defendant to withdraw his guilty plea and to plead anew.

Affirmed in part; reversed in part and remanded with directions.

McNAMARA and MEJDA, JJ., concur.